E-FILED
Thursday, 25 August, 2022  02:39:33 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| **ERIC CARRANZA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 20-3087** |
| ) | |
| **BUTCH POOL and AARON ZEISLER,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>OPINION AND ORDER</u>

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE:**

Before the Court is a Motion for Summary Judgment (d/e 27) and a Memorandum in Support thereof (d/e 28) filed by Defendants Butch Pool and Aaron Zeisler ("Defendants"). Defendants have shown that Plaintiff Eric Carranza ("Plaintiff") cannot prove essential elements of either Plaintiff's malicious prosecution claim or his civil conspiracy claim. However, Plaintiff has carried his burden to show that Officer Pool's actions in effectuating Plaintiff's arrest in December 2018 were excessive in light of then-existing clearly established law. Defendants' Motion (d/e 27) is, therefore, GRANTED IN PART and DENIED IN PART.

# I.   FACTS

The Court draws the following facts from the parties' statements of material facts, taking into account each party's objections thereto.  The Court discusses material factual disputes, if any, in its analysis.  Any fact submitted by any party that was not supported by a citation to evidence will not be considered by the Court.  See Civ. LR 7.1(D)(2)(b)(2).  Any response to an allegedly disputed fact unsupported by evidentiary documentation is deemed admitted.  Id.

This case arises from a traffic stop that occurred on December 15, 2018.  Plaintiff Eric Carranza was driving a delivery truck for his employer, Sleep Number, north on Interstate 55 when he was stopped by Defendant Illinois State Police Officer Butch Pool at approximately 10:13 a.m. near mile marker 52.5.  Def.'s Mem. (d/e 28) pp. 3 & 7.  A check of Plaintiff's driver's license showed an outstanding warrant for Plaintiff's arrest in an unrelated case in Montgomery County, Illinois.  Id. pp. 2–3.  The Montgomery County warrant, issued in the Circuit Court of the Fourth Judicial Circuit for Montgomery County, Illinois case number 2016-TR-5073, was

issued as a result of a failure to appear for a hearing on a traffic
ticket dated November 1, 2016.  Id. p. 2.

When Officer Pool learned of the outstanding arrest warrant,
he directed Plaintiff to proceed ahead from where the two vehicles
were stopped on the side of the interstate to a nearby gas station
parking lot so that Pool could conduct a truck inspection.  Id. at p.
3.  Officer Pool then messaged Defendant Illinois State Trooper
Aaron Zeisler that Officer Pool suspected he had stopped someone
for a motor carrier safety inspection who was also wanted for arrest.
Id.  Officer Pool began performing a truck inspection on Plaintiff's
truck, and Officer Zeisler eventually arrived on the scene.  Id.  Once
the inspection was complete, Officers Pool and Zeisler discussed the
outstanding warrant between themselves in Pool's car.  Id.

What happened next forms the basis of Plaintiff's suit and was
captured by Pool's dashcam video.  While Officers Pool and Zeisler
were in Pool's car, the audio of the dashcam cut out but the video
continued to record.  Ex. 4 at 17:30.  The video shows Officers Pool
and Zeisler walk from Pool's car to the driver's side of Plaintiff's
truck and ask Plaintiff to exit the truck.  Id. at 19:00–19:45.
Plaintiff obeyed, and Officer Pool informed Plaintiff about the

outstanding warrant.  Def.'s Mem. at p. 4.  The trio walked to the back of Plaintiff's truck so that they were between the front of Officer Pool's car and the rear of Plaintiff's truck.  Ex. 4 at 19:00–19:45.

The video then shows Plaintiff calmly speaking with the officers for about a minute.  Ex. 4 at 19:40–20:35.  Plaintiff, upon learning of the warrant, stated that he was willing to go with Defendants but wanted to contact his employer first.  Def.'s Mem. at p. 4; Pl.'s Resp. (d/e 29) at p. 3.  Plaintiff testified that he "just asked if [Plaintiff] could make a quick phone call to [his] manager to let them know what was going on."  Pl.'s Resp. at p. 3.  Plaintiff initially placed his hands in his coat pockets but mostly removed his hands at Officer Zeisler's instruction, though Plaintiff's thumbs remained hooked in his coat pockets.  Def.'s Mem. at p. 4; Ex. 4 at 19:27–19:32.  According to Plaintiff, he "visibly held his hands against the coat with [his] fingers spread so the officers could not only see that [he] had nothing in [his] hands, but that there was no way for [him] to even grab anything with [his] hands without [the officers] very clearly being able to see it and react accordingly."  Pl.'s Resp. at p. 6.

Officer Pool told Plaintiff he was under arrest and instructed Plaintiff to place his hands behind his back.  Def.'s Mem. at p. 4; Pl's Resp. at p. 5.  Plaintiff responded by again asking the officers if Plaintiff could call his boss at Sleep Number to inform him of the situation.  Pl.'s Resp. p. 3.  Plaintiff remained still while facing the officers during the entirety of their conversation.  Ex. 4 at 19:40–20:35.

Officer Pool then "performed a joint manipulation by grabbing the inside of Plaintiff's left arm and placing [Pool's] forearm on the back of Plaintiff's shoulder to take [Plaintiff] to the ground."  Def. Mem. at p. 5.  Plaintiff did not resist the takedown and instead "just went limp."  Def.'s Mem. at p. 8; Pl.'s Resp. at p. 6.  Plaintiff was handcuffed while face-down on the ground.  Def.'s Mem. at p. 6.  Officer Pool then turned back on the dashcam's audio.  Id.  The officers stood Plaintiff up and performed a search in which they recovered a small folding knife from Plaintiff's right pant pocket.  Id.  Officer Pool then placed Plaintiff in the patrol car and drove him to the Montgomery County Jail.  Id. at pp. 6 & 11.

In addition to the failure to appear charge, Plaintiff was charged with resisting a peace officer in Circuit Court of the Fourth

Judicial Circuit for Montgomery County, Illinois case number 2018-CM-405 on December 21, 2018.  Def.'s Mem. at p. 6.  The resisting charge was eventually dismissed on motion of the Montgomery County State's Attorney on August 16, 2019.  Id.  The dismissal order does not state a reason for the dismissal.  See Motion and Order for Dismissal, Circuit Court for the Fourth Judicial Circuit, Montgomery County, Illinois Case No. 18-CM-405 (attached as Appendix 1).

Plaintiff filed the present suit on December 13, 2019 in the Circuit Court of the Fourth Judicial Circuit for Montgomery County, Illinois case number 2019-LM-98.  Notice of Removal (d/e 1).  That case was removed to this Court on March 30, 2020.  Id. Defendants filed a Motion for Summary Judgment (d/e 27) on November 30, 2021 and Plaintiff filed a Response (d/e 29) on December 21, 2021.  Defendants did not file a reply brief.  The Court ordered supplemental briefing as to Defendant Pool's assertion of the defense of qualified immunity as to Count III on July 21, 2022.  Plaintiff filed his supplemental brief on August 4, 2022, (d/e 30).  Defendants have not timely filed any supplemental briefing as of the entry of this order.

## II.   LEGAL STANDARD

Defendants move for summary judgment under Federal Rule of Civil Procedure 56.  Summary judgment under Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  On such a motion, the facts and all reasonable inferences derived therefrom are viewed in the light most favorable to the non-moving party.  Scott v. Harris, 550 U.S. 372, 380 (2007); Blasius v. Angel Auto., Inc., 839 F.3d 639, 644 (7th Cir. 2016) (citing Cairel v. Alderden, 821 F.3d 823, 830 (7th Cir. 2016)).

A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party bears the burden of establishing that there is no genuine dispute as to any material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Modrowski v. Pigatto, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not

necessary" (internal citation omitted)).  After the moving party does so, the non-moving party must then go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson,</u> 477 U.S. at 255 (quotation and footnotes omitted). Summary judgment is warranted when the moving party carries its initial burden and the non-moving party cannot establish an essential element of its case on which it will bear the burden of proof at trial.  <u>Kidwell v. Eisenhauer</u>, 679 F.3d 957, 964 (7th Cir. 2012).  "[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." <u>Johnson v. Cambridge Indus., Inc.</u>, 325 F.3d 892, 901 (7th Cir. 2003).

### III.   ANALYSIS

Defendants move for summary judgment on Plaintiff's three Counts remaining in this case: Count II for Malicious Prosecution, Count III for Excessive Force against only Defendant Pool, and Count IV Conspiracy.  Plaintiff opposes summary judgment on each Count.

**A.    Plaintiff has not carried his burden to offer evidence from which a reasonable jury could find in his favor on the malicious prosecution claim.**

Generally, "suits for malicious prosecution are not favored in law." <u>Beaman v. Freesmeyer</u>, 2019 IL 122654, ¶ 24, 131 N.E.3d 488, 494 (Ill. 2019).  To prove a claim of malicious prosecution in Illinois, a plaintiff must show "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." <u>Id.</u> (quoting <u>Swick v. Liautaud</u>, 169 Ill.2d 504, 512 (1996)).  A plaintiff's failure to offer evidentiary proof of any one of these elements will defeat a malicious prosecution claim.  <u>Id.</u>

The parties dispute whether Plaintiff can establish the second element of his claim: that the underlying criminal proceeding was terminated "in favor of the plaintiff." <u>Id.</u>  It is undisputed that the Plaintiff's underlying criminal case, Case No. 18-CM-405 in the Circuit Court for the Fourth Judicial Circuit, Montgomery County, Illinois, ended when the state court granted the State's motion to dismiss.  <u>See</u> App. 1.  Also beyond dispute is that the combined

Motion and Order does not specify any reason why the State sought to dismiss the criminal proceeding.  Id.

Whether a criminal proceeding which forms the basis of a malicious prosecution claim and was abandoned via dismissal on motion of the State can be said to have been dismissed in favor of the defendant depends on the circumstances surrounding the dismissal.  Swick, 169 Ill.2d at 512–513.[1]  The general rule is that "a criminal proceeding" is considered "terminated in favor of the accused when a prosecutor formally abandons the proceeding" through a motion to dismiss.  Id. at 513.  However, the general rule does not apply when "the abandonment is for reasons not indicative of the innocence of the accused."  Id.  "[T]he bare fact that a case has been" voluntarily dismissed "is not sufficient to establish that the case was terminated favorably for the plaintiff.  Rather, the plaintiff must show that the prosecutor abandoned the case for reasons indicative of the plaintiff's innocence."  Ferguson v. City of Chicago, 213 Ill.2d 94, 102 (Ill. 2004).  Importantly, "[t]he burden of

---

[1] The Court notes that, while the U.S. Supreme Court has recently held that malicious prosecution claims arising under the Fourth Amendment and 42 U.S.C. § 1983 need only show that the underlying prosecution ended "without a conviction," Thompson v. Clark, 142 S.Ct. 1332, 1335 (2022), Plaintiff's claim here arises from the Illinois malicious prosecution tort, the elements of which the Illinois Supreme Court has yet to consider in light of Thompson.  The Court, therefore, continues to analyze Plaintiff's claims under Swick v. Liautaud, 169 Ill.2d 504 (1996), and current Illinois case law.

proof of a favorable termination . . . remains with the plaintiff."
<u>Swick</u>, 169 Ill.2d at 513.

Plaintiff argues that questions of fact exist surrounding the dismissal of his underlying criminal proceeding because, according to Plaintiff, he "rejected the State's initial offer [sic] . . . because he was innocent and because the State could not have proved that he had resisted arrest." Pl.'s Resp. (d/e 29) p. 12 (citing Ex. A, Decl. of Eric Carranza, ¶ 15)).   But "self-serving statements in affidavits without factual support in the record carry no weight on summary judgment." <u>Butts v. Aurora Health Care, Inc.</u>, 387 F.3d 921, 925 (7th Cir. 2004).  Plaintiff offers no other evidence to either support his statement that the case was dismissed because "he was innocent." (d/e 29) p. 12.  Neither does Plaintiff offer any additional evidence from which a reasonable jury could conclude that the underlying criminal case was "abandoned  . . . for reasons indicative of the plaintiff's innocence." <u>Ferguson</u>, 213 Ill.2d at 102. Accordingly, the Court cannot find a question of fact to preclude summary judgment.

Plaintiff bears the burden at this stage to show what evidence he has "that would convince a trier of fact to accept its version of

events." <u>Johnson</u>, 325 F.3d at 901.  In this case, that includes the

element of Plaintiff's malicious prosecution claim that Plaintiff's

underlying criminal proceeding was terminated in his favor.  <u>Swick</u>,

169 Ill.2d at 513.  Plaintiff has not carried that burden.  Therefore,

summary judgment in favor of Defendants is appropriate as to

Plaintiff's malicious prosecution claim.

**B.     Defendant Pool is not entitled to qualified immunity as to Plaintiff's excessive force claim for which Plaintiff has raised a genuine dispute of fact for trial.**

Plaintiff also claims that Officer Pool used excessive force while

arresting Plaintiff in violation of Plaintiff's rights under the Fourth

Amendment.  Officer Pool argues that he is entitled to qualified

immunity as to this claim because, in his view, Plaintiff was

resisting arrest when Defendant performed the joint manipulation

to take Plaintiff to the ground.  Plaintiff argues that Officer Pool is

not entitled to qualified immunity because Plaintiff was, at most,

passively resisting and clearly established law required Officer Pool

to use only minimal force.

Generally, the doctrine of qualified immunity is a shield police

officers may use when faced with a suit for damages in which a

plaintiff claims constitutional violations.  <u>Ashcroft v. al-Kidd</u>, 563

U.S. 731, 735 (2011) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  Whether an officer is entitled to qualified immunity "involves a two-pronged inquiry: (1) whether the facts, read in favor of the of the non-moving party, amount to a constitutional violation; and (2) whether the constitutional right was clearly established at the time of the alleged violation."  <u>Rainsberger v. Benner</u>, 913 F.3d 640, 647 (7th Cir. 2019) (Barrett, J.).  Put another way, "officers are entitled to qualified immunity . . . unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'"  <u>Dist. of Columbia v. Wesby</u>, 138 S.Ct. 577, 589 (2018) (quoting <u>Reichle v. Howards</u>, 566 U.S. 658, 664 (2012)).

The Court need not always address both questions in the qualified immunity analysis.  <u>Pearson v. Callahan</u>, 555 U.S. 223, 236–42 (2009).  "[I]f the law was not clearly established, there is no need to tackle the (often harder) question whether the challenged conduct violated the Constitution."  <u>Rainsberger</u>, 913 F.3d at 647.  But where the law was clearly established, both qualified immunity questions must be addressed.  <u>Id.</u>

### i. It was clearly established in 2018 that Officer Pool could only use minimal force when arresting Plaintiff.

In December 2018, "it was of course clearly established that a police officer may not use excessive force in arresting an individual." Becker v. Elfreich, 821 F.3d 920, 928 (7th Cir. 2016) (quoting Holmes v. Vill. of Hoffman Estates, 511 F.3d 673, 687 (7th Cir. 2001)).  The closer question, though, is whether "the right to be free from the degree of force employed" in this case would "have been clear to a reasonable officer at the scene."  Becker, 821 F.3d at 928 (quoting Bush v. Strain, 513 F.3d 492, 502 (5th Cir.2008)).  "To be clearly established the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right.'"  Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  A party need not point to "a case directly on point . . . for a right to be clearly established."  Phillips v. Cmty. Ins. Corp., 678 F.3d 513, 528 (7th Cir.2012).  All that is required is that "the unlawfulness" of the conduct "must be apparent" in light of pre-existing law.  Becker, 821 F.3d at 928.  Here, it was.

The Fourth Amendment protects a person's right to be free from unreasonable searches and seizures.  The Amendment also

governs excessive force claims, which are "reviewed under the
Fourth Amendment's objective reasonableness standard." <u>Dawson
v. Brown</u>, 803 F.3d 829, 833 (7th Cir. 2013) (citing <u>Graham v.
Connor</u>, 490 U.S. 1, 8 (1989)); <u>Morfin v. City of East Chicago</u>, 349
F.3d 989, 1004 (7th Cir. 2003) (same)).  Under this standard, courts
consider whether a "reasonable officer under the circumstances"
would have acted as the officer in question acted.  <u>Id.</u>  This inquiry
"requires a careful balancing of the nature and quality of the
intrusion on the individual's Fourth Amendment interests against
the countervailing governmental interests at stake." <u>Morfin</u>, 349
F.3d at 1004 (quoting <u>Graham</u>, 490 U.S. at 8 (additional citation
and internal quotation omitted)).  The question is whether, "judging
from the totality of the circumstances at the time of the [seizure],
the officer use[d] greater force than was reasonably necessary to
effectuate the [seizure]." <u>Phillips</u>, 678 F.3d at 519.

Whether the force used to effectuate an arrest was necessary
"requires careful attention to the facts and circumstances of each
particular case, including the severity of the crime at issue, whether
the suspect poses an immediate threat to the safety of the officers
or others, and whether he is actively resisting arrest or attempting

to evade arrest by flight." <u>Morfin</u>, 349 F.3d at 1004–1005 (quoting
<u>Graham</u>, 490 U.S. at 396).  Officer Pool argues that Plaintiff was
actively not complying which justified Officer Pool's use of force
against Plaintiff when Pool performed the joint manipulation to take
Plaintiff to the ground.  Plaintiff, in turn, argues that the joint
manipulation was excessive because Plaintiff was, at most,
passively not complying when Officer Pool took Plaintiff to the
ground.

The Court agrees with Plaintiff.  While there is no test for when
a plaintiff is exhibiting active or passive noncompliance, the
Seventh Circuit has found multiple times passive noncompliance, at
most, where a nonaggressive individual's only fault was failure to
comply with orders from law enforcement.  In <u>Becker v. Elfreich</u>, the
Seventh Circuit held that the plaintiff was "a nonresisting (or at
most passively resisting) suspect" where the plaintiff did not comply
with officer's command to get on the ground and where the plaintiff
was being bit by a police dog.  821 F.3d at 929.  In <u>Abbott v.
Sangamon County, Illinois</u>, the Seventh Circuit held that the
plaintiff "at most exhibited passive noncompliance and not active
resistance" when the plaintiff did not comply with orders to roll over

after falling to the ground when the plaintiff was tasered.  705 F.3d 706, 730 (7th Cir. 2013).  And in <u>Phillips</u>, the Seventh Circuit held that the plaintiff's conduct was passive noncompliance, "[t]o the extent that [the plaintiff's] perceived conduct could be considered 'resistance' at all," where the plaintiff smoked a cigarette, rested her feet out of her parked car's driver-side window, and picked up a water bottle, all while officers continuously ordered her to show her hands and exit her vehicle for approximately ten minutes.  678 F.3d at 525.  <u>See also</u> <u>id.</u> (collecting cases).

Here, Plaintiff's conduct was, at most, passive noncompliance. It is undisputed that Plaintiff followed Officer Pool's directions to exit his truck and follow both Officer Pool and Officer Zeisler to the rear of the truck.  As evidenced by the video, it also cannot be disputed that Plaintiff remained still during the entire episode and had his hands removed from his pockets but for hooking his thumbs.  Plaintiff was told he was under arrest for failing to appear for a hearing on Plaintiff's previous traffic ticket.  Plaintiff responded by asking Officer Pool if he could call Plaintiff's employer to inform his employer of the situation.  The parties' entire conversation lasted fewer than two minutes, during the entirety of

which Plaintiff did not appear to become agitated, attempt to flee, or even move in the slightest.  Such behavior cannot be described as anything more than passive noncompliance if that.

Officer Pool argues that Plaintiff's behavior in keeping his thumbs hooked inside Plaintiff's coat pockets constitutes active resistance.  Pool also asserts that Plaintiff "started to look around" during the conversation, which Pool believed could "be a sign that a suspect is about to engage in fight or flight."  Pl.'s Mot. p. 25 (citing Pool Decl.).  But the video clearly shows Plaintiff's head not moving during his conversation with Pool.  And even if the video didn't refute Pool's assertion, at this stage, the facts are to be viewed in the light most favorable to Plaintiff as the nonmoving party, so such an assertion would amount to, at most, a dispute among the parties for the trier of fact to decide.  Instead, the video gives an account of Plaintiff's actions that cannot be disputed and cannot be said to be anything more than, if at all, passive noncompliance.  Indeed, "[w]illful non-compliance is not the same as 'actively resisting' but instead a passive 'resistance.'"  Becker, 821 F.3d at 927(quoting Phillips, 678 F.3d at 525).  That is what occurred here.  The only

question that remains is whether and to what extent force was permissible under clearly established law.

As indicated above, "[f]orce is reasonable only when exercised in proportion to the threat posed." Phillips, 678 F.3d at 528. In this case, Plaintiff was informed he was placed under arrest for failing to appear in court for a traffic ticket and was at most passively noncompliant. Prior to December 2018 when Officer Pool effectuated the arrest here, "it was well-established in this circuit that police officers could not use significant force on nonresisting or passively resisting suspects" and that "only minimal force is warranted where the accused is passively resisting." Becker, 821 F.3d at 928–929 (quoting Phillips, 678 F.3d at 529). Given the facts of this case, the Court, therefore, finds that a reasonable officer would have known that he could not use more than minimal force to effectuate Plaintiff's arrest under clearly established law.

### ii. Under clearly established law, Plaintiff has raised an issue of fact as to whether Officer Pool used excessive force to effectuate arrest.

Plaintiff has presented evidence from which a reasonable jury could conclude that the force Officer Pool used was more than minimal. The Seventh Circuit has not announced any test for

determining what force is "minimal."  The Seventh Circuit has, however, found that permissible minimal force includes removing an unresponsive, passively-noncompliant driver from his car, Smith v. Ball State Univ., 295 F.3d 763, 770–71 (2002), and holding an intoxicated, actively-resistant person's wrist in a "wrist lock" technique to prevent her from freeing herself from handcuffs while in an ambulance, Fitzgerald v. Santoro, 707 F.3d 725, 734–35 (7th Cir. 2013).  In contrast, the Seventh Circuit has found minimal force is exceeded where an officer sets a police dog on a nonresistant suspect and sends the suspect to the ground by grabbing the suspect's shirt.  Becker, 821 F.3d at 928–929.  Other cases in which the force used was held to have exceeded minimal force include cases where a taser was used against a "nonviolent misdemeanant who . . . made no movement when . . . the officer instructed her to turn over," Abbott, 705 F.3d at 732, and where officers used an impact weapon which employed a "less lethal" bean-bag projectile to subdue a woman who was passively noncompliant, Phillips, 678 F.3d at 521–22.

Closer to the facts of the present case is the Seventh Circuit's analysis in Brooks v. City of Aurora, Illinois.  653 F.3d 478 (7th Cir.

2011).  In that case, the plaintiff was barbecuing outside his apartment when defendant-officers arrived to effectuate an arrest warrant for driving on a suspended license.  Id. at 480–81.  An officer informed the plaintiff that he was under arrest.  Id. at 481.  The plaintiff then backpedaled away from the officer while attempting to bat away the officer's hands.  Id.  The officer pepper-sprayed the plaintiff, placed him under arrest, and took him to the police station where he was charged with driving on a suspended license and resisting a peace officer in the performance of his duties.  Id.

The Seventh Circuit held that the use of pepper spray to subdue the plaintiff in Brooks was not excessive and that the defendants were entitled to qualified immunity.  653 F.3d at 486–87.  The court based its conclusion on the facts that the plaintiff was backing away from the officers, was batting away the officer's hands, and was at his home where he could have been able to "fortify himself or . . . escaped before the officer employ[ed] reasonable means of incapacitation."  Id. at 487.

Mr. Carranza's behavior and the circumstances of his arrest were markedly different than the plaintiff's in Brooks.  Mr. Carranza

did not attempt to flee and did not become physical with Officer Pool. Mr. Carranza did not "employ[] a number of moves designed to thwart" Officer Pool's "attempts to take him into custody." Id. at 486. Instead, Mr. Carranza calmly spoke with Officer Pool for a little over a minute and simply requested to inform his employer of the situation since Mr. Carranza was performing his job at the time. Mr. Carranza then went limp once Officer Pool performed the joint manipulation, a far cry from actively resisting or attempting to flee. Moreover, Mr. Carranza was being arrested for a minor infraction of failing to appear in court on a traffic ticket. He did not pose a threat to Officer Pool and was, as stated above, passively noncompliant at worst. Mr. Carranza never attempted to interfere with Officer Pool's duties. Given the landscape of preexisting case law, any reasonable officer would know in December 2018 that a joint manipulation takedown of a calm, passively noncompliant suspect would have been more than minimal. The constitutional question having been put beyond debate in light of clearly established law, the Court finds that Officer Pool is not entitled to qualified immunity on Plaintiff's excessive force claim.

**C.   Plaintiff has not carried his burden to offer evidence of an agreement between Officers Pool and Zeisler, an essential element of the conspiracy claim.**

Defendants lastly seek summary judgment on Plaintiff's civil conspiracy claim.  "To succeed in a claim of civil conspiracy under Illinois law, the plaintiffs must eventually establish: (1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff."  Borsellino v. Goldman Sachs Grp., 477 F.3d 502, 509 (7th Cir. 2007) (citing McClure v. Owens Corning Fiberglas Corp., 188 Ill.2d 102, 241 (Ill. 1999)).  "The agreement is a necessary and important element" of any civil conspiracy claim.  Id. (additional quotation omitted).

Defendants argue that they are entitled to summary judgment because Plaintiff has not provided sufficient evidence to prove an agreement was made between Officers Pool and Zeisler.  Plaintiff responds by citing to the Complaint (d/e 1-3) and his own Declaration, (d/e 29) Ex. A, in which Plaintiff lists the reasons Plaintiff believes there was an agreement between the officers.

Plaintiff argues that his stated beliefs could lead a reasonable juror to infer an "implicit agreement" between Officers Pool and Zeisler to have Plaintiff "prosecuted for a crime he did not commit."  Def.'s Resp. p. 13.

Plaintiff relies primarily on the Illinois Supreme Court's decision in <u>Fritz v. Johnson</u>, 209 Ill.2d 302 (Ill. 2004).  Def.'s Resp. p. 12.  There, the Illinois Supreme Court held that the plaintiff's in that case had met their burden at the pleading stage to "allege facts from which a conspiracy between [the defendants] could be inferred."  <u>Fritz</u>, 209 Ill.2d at 317.  But while Plaintiff is correct that an agreement may be "express or implied," <u>Scherer v. Balkema</u>, 840 F.2d 437, 442 (7th Cir. 1988), Plaintiff is incorrect in arguing that his burden at this stage is merely to offer an inference of such an agreement.

<u>Fritz</u> was decided at the motion to dismiss stage.  At that stage, in federal court, a plaintiff need only provide a short and plain statement of his claim showing he is entitled to relief and giving the defendants fair notice of the claims.  <u>Tamayo v. Blagojevich</u>, 526 F.3d 1074, 1081 (7th Cir. 2008).  And in holding that the <u>Fritz</u> plaintiff had "sufficiently allege[d] facts from which a

conspiracy between [the defendants] could be inferred," the <u>Fritz</u>
Court applied the parallel Illinois pleading standard. 209 Ill.2d at
309 ("Because the issues arose in the context of a motion to dismiss
plaintiff's complaint, we are required to interpret all pleadings and
supporting documents in the light most favorable to the nonmoving
party. We must also accept as true all inferences that can
reasonably be drawn in plaintiff's favor." (internal quotation and
additional citation omitted)).

    In contrast, Plaintiff is now at the stage of his case where he
must "set forth specific facts showing that there is a genuine issue
for trial." <u>Anderson,</u> 477 U.S. at 255 (quotation and footnotes
omitted). As previously stated, Plaintiff must go beyond "self-
serving statements in affidavits without factual support in the
record" to satisfy his burden at summary judgment. <u>Butts</u>, 387
F.3d at 925. Plaintiff states in his Affidavit only that "[t]he reason
[he] believe[s] the Defendants conspired against [Plaintiff] is that
[Defendants] lied and exaggerated in their reports about various
details of the events of the incident." Def.'s Ex. A at ¶ 21.
Specifically, Plaintiff asserts in his Declaration that Defendants

a. falsely stat[ed] that Mr. Carranza "pushed back and attempted to remain standing" when Defendant Pool used physical force against him;

b. alleg[ed] that Mr. Carranza "began to look around" as "an indicator that he was planning a route to escape";

c. overstat[ed] the number of times they "ordered" Mr. Carranza to put his hands behind his back before using physical force against him;

d. characterize[ed] the small folding knife Mr. Carranza was carrying as part of his job with the Company as a "lethal cutting instrument"; and

e. bizarrely [wrote] that, on the way to the jail, Mr. Carranza "laughed softly to himself in a maniacal sort of way."

Id.

But those statements are not based on Plaintiff's personal knowledge of any agreement between Officers Pool and Zeigler and do not set forth specific facts to support the conclusion that Defendants made some agreement between themselves.  See Payne v. Pauley, 337 F.3d 767, 772–73 (7th Cir. 2003).  Instead, they are mere speculative conclusory statements about Plaintiff's belief that Defendants conspired in some way.  Such conclusory statements, without more, are insufficient to raise a genuine issue of fact to defeat summary judgment.  Butts, 387 F.3d at 925.  Because

Plaintiff has not carried his burden to produce sufficient evidence setting forth facts raising a genuine issue for trial, Defendants are also entitled to summary judgment as to Plaintiff's conspiracy claim.

## IV.   CONCLUSION

Plaintiff has not carried his burden to provide evidence at this stage from which a reasonable juror could find in his favor as to the malicious prosecution claim or the conspiracy claim.  Therefore, Defendants' Motion for Summary Judgment (d/e 27) is GRANTED as to Counts II and IV.  But because Plaintiff has shown that a reasonable officer in Officer Pool's position in December 2018 would have known that the use of a joint manipulation to take Plaintiff to the ground was more than the minimal force allowed in such circumstances, the Court DENIES Officer Pool's request for qualified immunity on Count III and, for the same reason, his Motion for Summary Judgment (d/e 27) as to that Count.

**IT IS SO ORDERED.**
**ENTERED: August 24, 2022.**
**FOR THE COURT**

/s/ Sue E. Myerscough
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**

# Appendix 1

IN THE CIRCUIT COURT FOR THE FOURTH JUDICIAL CIRCUIT
MONTGOMERY COUNTY, ILLINOIS

| | | |
|---|---|---|
| The People of the State of Illinois | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO.  18-CM-405 |
| | ) | |
| **ERNEST A. CARRANZA,** | ) | |
| Defendant. | ) | |

**FILED**

ΔUG 1 6 2019 1

HOLLY LEMONS
Circuit Court Clerk
4TH Judicial Circuit

### MOTION TO DISMISS

Now on this 16th day of August, 2019, come the People of the State of Illinois by WES

POGGENPOHL, Assistant State's Attorney, and moves for an entry of dismissal in the above-

entitled cause.

WES POGGENPOHL
Assistant State's Attorney

**FILED**

AUG 1 6 2019 1

HOLLY LEMONS
Circuit Court Clerk
4TH Judicial Circuit

WES POGGENPOHL
Assistant State's Attorney
120 North Main
Hillsboro, Illinois 62049
Telephone: (217) 532-9551

### ORDER GRANTING MOTION

It is hereby ordered that the above-entitled cause be dismissed, with prejudice.

ENTER:   8/16/19

Judge

The foregoing, instrument is a full, true and correct copy of the
original on file in this office

Attest____July 25ᵗʰ_____ 20__22

DANIEL T. ROBBINS, Clerk of Circuit Court of the Fourth Judicial
Circuit, Montgomery County, Illinois

By___Daniel Robbins_____ Circuit Clerk